**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE CHACON-RIOS,

Defendant-Appellant.

No. 06-4138
(D.C. No. 2:00-CR-7-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Defendant-Appellant Jose Chacon-Rios appeals his conspiracy conviction, arguing that there was insufficient evidence of his membership in the conspiracy and that the jury instructions failed to adequately identify the conspiracy. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Chacon-Rios was indicted along with Jaime Ramirez-Gonzales on one count of conspiring from November 22 to November 24, 1998, "with others known and unknown," to distribute methamphetamine and to possess methamphetamine with intent to distribute. R., Vol. 1, Doc. 1 at 1. At trial, Special Agent Howard Ellis of the Federal Bureau of Investigation (FBI) testified that in the summer of 1998, the FBI began investigating Edgar Morales and Leo Gonzales for methamphetamine distribution in Salt Lake City. Police Officer Dale Bench assisted the FBI's investigation in an undercover capacity, making several purchases from Morales and Gonzales beginning in August 1998 and extending into November. At one point, Morales introduced Officer Bench to "Cuco," *id.*, Vol. 2 at 64, who, according to Morales, would be handling any further deliveries of methamphetamine.

Agent Ellis was providing cover for Officer Bench and conducting surveillance with other agents during Bench's purchases. Agent Ellis testified that methamphetamine sold to Bench in mid-November was taken from a residence at 70 West 2400 South, which Ellis described as a "stash house."[1] *Id.* at

---

[1] "A 'stash house' is a place where drugs and money [are] kept" to "hide the identity of the true owner of the drugs or the cash," "to protect the drugs from rival organizations, [and] to keep the drugs hidden from law enforcement surveillance." R., Vol. 2 at 20-21.

92. A pole camera was trained on the 70 West residence during the investigation of this case.

Conversations from a number of wiretapped telephone calls that occurred on November 22 were admitted at trial.[2] Many of the calls involved an individual known as "Pepe," who would later be identified at trial as Mr. Chacon-Rios. During one call, Gonzales asked Morales "if Pepe's stuff is the only thing going on that day." *Id.* at 97. In another call, "Pepe" gave Morales "the number of" Luis Orona and another person "from Nebraska," *id.* at 127, and "Pepe" told Morales that he "will need to borrow at least $500 before he can go," *id.* at 99. In a call made at 5:22 p.m., Morales told Gonzales "that they have to get five [pounds] put together . . . for 'Pepe,' who has gotten three bills together." *Id.* at 100; *see also id.* at 101. Several minutes later, Morales called Ramirez-Gonzales and asked for "an eight thousand dollar pound of [high purity] methamphetamine," *id.* at 101; *see also id.* at 102, but later changed the request to a lesser quality. Morales then called "Pepe" to discuss "Pepe's" "long trip coming up." *Id.* at 104.

Telephone conversations from November 23 calls were also admitted. During one call, Morales and "Pepe" discussed "the five pounds that are being put together for the trip." *Id.* at 106. In a subsequent call, Morales told "Pepe" that

---

[2]    Even though the telephone conversations were transcribed and admitted into evidence at trial, the record on appeal includes only summations of the conversations.

the "five pounds of methamphetamine [are] ready," *id.* at 108, and that they should meet in fifteen minutes, *id.* at 109. The pole camera revealed that Morales, "Cuco," and Mr. Chacon-Rios soon arrived at the 70 West residence, that Mr. Chacon-Rios entered the house after speaking with "Cuco," and that Mr. Chacon-Rios departed after a few minutes carrying "a plastic bag containing something . . . consistent with five pounds of methamphetamine." *Id.* at 112.

During a November 26 telephone call, "Pepe" and Morales discussed the long trip that "Pepe" had taken, and "Pepe" told Morales that the "customer . . . did not like the quality of the methamphetamine." *Id.* at 114. Two days later, "Pepe" and Morales discussed on the phone how the five pounds of methamphetamine were "too low of quality to sell." *Id.* at 116. Orona testified that on one occasion in the Winter of 1998, Mr. Chacon-Rios delivered five pounds of poor quality methamphetamine to him in Nebraska.

FBI Special Agent Juan Becerra testified that after Mr. Chacon-Rios was arrested, he admitted that his nickname was "Pepe," that he was the person in the photograph taken by the pole camera on November 23, 1998, and that he was delivering methamphetamine in the bag to Nebraska for Morales.

At the jury instruction conference, Mr. Chacon-Rios proposed two instructions that are relevant to this appeal. Proposed instruction five read, in part: "The charge in this indictment is [that] a conspiracy extended from July of 1998 through sometime in December of 1998"; and "It is for you, the jury to

determine whether Mr. Chacon[-]Rios conspired or not and was a member of the conspiracy charged in the indictment, whether he was a member of another conspiracy or whether he was not [a] member of any conspiracy at all." Aplt. Br., Addendum A-4. Proposed instruction six read: "The defendant's theory of the case is that he was not a member of the conspiracy charged in the indictment." *Id.* The district court rejected the instructions, ruling that they were covered by its instruction twenty-two:

> Even if the evidence in the case shows that Mr. Chacon-Rios was a member of some conspiracy, but that this conspiracy is not the single conspiracy charged in the indictment, you must acquit Mr. Chacon-Rios of this charge.
> Unless the government proves the existence of the single conspiracy described in the indictment beyond a reasonable doubt, you must acquit Mr. Chacon-Rios of this charge.

R., Vol. 1, Doc. 121 at 25.

During closing arguments, the government focused the jury on the dates of the conspiracy charged in the indictment, stating, "that's the issue before you, not whether or not he was doing that before or continued to do it after," and "our evidence with regards to the activities of before was to only assist you and help us prove what was going on between November 22nd, 1998 and November 24th of 1998." *Id.*, Vol. 4 at 48. Mr. Chacon-Rios' counsel argued that Mr. Chacon-Rios "did nothing more than to try to make a little money by working with Edgar [Morales] to take this stuff to Luis [Orona]," *id.* at 57, and that "[j]ust as Edgar and Jaime [Ramirez-Gonzales] had a side conspiracy, Pepe and Edgar had a side

-5-

conspiracy. It's not the same conspiracy that they've charged in the indictment."
*Id.* at 59.

After deliberating, the jury returned a guilty verdict and found the amount of methamphetamine to be five pounds. This appeal followed.

**DISCUSSION**

I. Sufficiency of the Evidence

Mr. Chacon-Rios first argues that there was insufficient evidence of his membership in the conspiracy. Whether there is sufficient evidence is a question of law that we review de novo. *United States v. Chavis*, 461 F.3d 1201, 1207 (10th Cir. 2006). "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Pettigrew*, 468 F.3d 626, 639 (10th Cir. 2006) (quotation omitted), *cert. denied*, 75 U.S.L.W. 3438 (Feb. 20, 2007). In conducting our review, we consider both direct and circumstantial evidence, as well as the reasonable inferences to be drawn therefrom, and "it is not our duty to weigh conflicting evidence [ ]or to consider the credibility of witnesses." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006).

A conspiracy conviction requires proof beyond a reasonable doubt of (1) an agreement with another person to violate the law, (2) knowledge of the conspiracy's essential objectives, (3) knowing and voluntary participation, and

(4) interdependence among the alleged conspirators. *United States v. McCullough*, 457 F.3d 1150, 1159 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 988 (2007).

Mr. Chacon-Rios contends that "the charged conspiracy was in fact the conspiracy running from July 98 until December 1998." Aplt. Br. at 11. We reject Mr. Chacon-Rios' attempt to enlarge the scope of the conspiracy charged and proved by the government. The indictment specified that the conspiracy to distribute and to possess with intent to distribute occurred from "the 22nd day of November, 1998, until the 24th day of November, 1998." R., Vol. 1, Doc. 1 at 1. During trial, the government argued those dates to the jury and indicated that evidence of prior activities was intended only to place Mr. Chacon-Rios in an ongoing conspiracy.[3] Further, the government did not vary from the single conspiracy charged in the indictment while presenting its evidence. *See United States v. Hall*, 473 F.3d 1295, 1305 (10th Cir. 2007) (explaining that a potentially fatal "variance occurs when the conspiracy charged in an indictment is different from the evidence adduced at trial").

---

[3] Mr. Chacon-Rios mischaracterizes the record when he states that "during a pre[-]trial hearing the government, when pressed by the court, assured that court that the indictment charged a conspiracy that ran from July of 1998 to December of 1998." Aplt. Br. at 7. Rather, during a *James* hearing, *see United States v. James*, 590 F.2d 575 (5th Cir. 1979), to determine the admissibility of coconspirator statements under Fed. R. Evid. 801(d)(2)(E), the government argued that Mr. Chacon-Rios had joined the conspiracy "at least by November 22nd," R., Supp. Vol. 1 at 27, and that evidence of conversations before that date was necessary "to place [the conspiracy] in context," *id.* at 20.

Mr. Chacon-Rios also contends that there was no evidence that he knew of the conspiracy's objective to distribute methamphetamine. We disagree. Mr. Chacon-Rios' knowledge of the objective was shown by his initial telephone conversations with Morales arranging the delivery to Orona, his meeting with Morales and "Cuco" at the stash house to obtain the methamphetamine, his delivery of the methamphetamine to Orona, and his subsequent telephone conversations with Morales stating that the methamphetamine was of poor quality and not sellable.

Next, Mr. Chacon-Rios seems to contest knowing and voluntary participation in the conspiracy. He contends that his contact with the conspiracy "was a one time deal," citing his unfamiliarity with Ramirez-Gonzales, his confusion of Leo Gonzales's voice for Morales' voice during a November 13 telephone call, his lack of "any significant financial assets," and his need for directions to the stash house. Aplt. Br. at 11. While "[c]asual transactions with persons involved in a conspiracy are insufficient to establish" participation, *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991), "[t]he defendant's participation in or connection to the conspiracy need only be slight," *United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998); *accord United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1989) (stating that a conspiracy conviction may lie even though the defendant "had not participated before and even though he played only a minor part"). The jury may presume that a defendant is a

knowing participant in the conspiracy when he acts in furtherance of the conspiracy's objective. *Johnston*, 146 F.3d at 789. Here, the jury could have reasonably presumed Mr. Chacon-Rios's knowing participation based on (1) his delivery of methamphetamine procured from the conspiracy's stash house to Orona and (2) his subsequent telephone calls notifying Morales that the methamphetamine was not sellable.

That Mr. Chacon-Rios may not have known Ramirez-Gonzales is of no moment. There is no requirement that a conspirator know every other member of the conspiracy, *see United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999), so long as he has "a general awareness of other alleged coconspirators," *Horn*, 946 F.3d at 741. Mr. Chacon-Rios knew Morales, a core conspirator, as evidenced by their numerous telephone conversations on November 22 and 23 arranging the delivery of methamphetamine to Orona, and there was circumstantial evidence showing that Mr. Chacon-Rios also knew "Cuco" as a conspirator, given that "Cuco" had handled methamphetamine deliveries for Morales and was seen speaking to Mr. Chacon-Rios at the stash house.

Finally, Mr. Chacon-Rios' lack of "significant financial assets" and his confusing Leo Gonzales for Morales do not compel the conclusion that he was not a participant, as there are any number of non-exculpatory explanations for these occurrences, including that Mr. Chacon-Rios had only recently joined the conspiracy. Nor does Mr. Chacon-Rios' need for directions to the stash house

negate his participation, as one may become a member of the conspiracy without full knowledge of all of its details. *United States v. Smith*, 413 F.3d 1253, 1276 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1093 (2006).

We conclude that substantial evidence supports Mr. Chacon-Rios' conspiracy conviction.

## II. Jury Instructions

"We review a district court's refusal to give a requested instruction for abuse of discretion." *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006). In determining whether the district court properly exercised its discretion, however, we review the instructions de novo to ensure that, "as a whole, they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *Id.*

Mr. Chacon-Rios argues that, without his proposed instructions, it was unlikely that the jury "ever consider[ed] that [he] was not a member of the charged conspiracy," or that it "even kn[e]w which conspiracy was the charged conspiracy." Aplt. Br. at 13. We disagree. The district court expressly directed the jury in instruction twenty-two to acquit Mr. Chacon-Rios if the evidence showed that he was a member of some conspiracy other than "the single conspiracy charged in the indictment." R., Vol. 1, Doc. 121 at 25. Further, instruction fourteen reproduced the indictment and instructions nineteen and twenty-three required the jury to consider whether the government had shown

beyond a reasonable doubt that "Mr. Chacon Rios was a member of the conspiracy charged in the indictment." *Id.* at 27; *see also id.* at 20. Based on these instructions, we conclude that the district court did not abuse its discretion in refusing Mr. Chacon-Rios' requested instructions.

The judgment of the district court is AFFIRMED.[4]

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[4]    On February 16, 2007, Mr. Chacon-Rios moved to stay these proceedings and to allow further briefing. In the motion, he states that the sentencing judge impermissibly increased his sentence by finding that the conspiracy involved thirteen-and-a-half pounds of methamphetamine, when the jury found only five pounds. Mr. Rios states that further briefing is necessary because he did not brief any sentencing issues and after briefing was completed the Supreme Court released *Cunningham v. California*, 127 S. Ct. 856, 860, 865-67 (2007) (citing, among other cases, *United States v. Booker*, 543 U.S. 220 (2005), to invalidate a state's sentencing scheme that assigned to the judge the authority to find by a preponderance of evidence facts exposing the defendant to an "elevated 'upper term' sentence"). We deny the motion for a variety of reasons. First, *Cunningham* offers Mr. Chacon-Rios nothing more than a reaffirmation of *Booker*, which precludes a sentencing judge, when operating under mandatory Federal Sentencing Guidelines, from finding a particular amount of drugs unless admitted by the defendant or proven to a jury beyond a reasonable doubt, *see Booker*, 543 U.S. at 244. *Booker* was available long before Mr. Chacon-Rios' sentencing, and his failure to include a *Booker* argument in his appellate brief constitutes waiver. *See United States v. Patterson*, 472 F.3d 767, 783 (10th Cir. 2006). Second, even if there were no waiver, Mr. Chacon-Rios admitted in a pre-sentencing motion for safety-valve treatment that the conspiracy involved thirteen-and-a-half pounds. R., Vol. 1, Doc. 143 at 2. And third, even if he had not admitted that weight, the sentencing judge applied the guidelines in an advisory fashion, and was therefore permitted to diverge from the jury's finding using a preponderance test. *See United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.), *cert. denied*, 126 S. Ct. 468 (2005).