**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**November 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ADAM CLAYTON ZILM,

    Petitioner - Appellant,

v.

STEVEN HARPE,

    Respondent - Appellee.

No. 24-5015
(D.C. No. 4:20-CV-00509-CVE-JFJ)
(N.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Adam Clayton Zilm was convicted of sexual abuse of a child under the age of twelve in Oklahoma state court. He seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 application challenging that conviction. We deny a COA and dismiss this matter.

## BACKGROUND

The victim was K.A., the eleven-year-old daughter of Zilm's girlfriend. In her initial disclosures to a neighbor, a sexual assault nurse, and a forensic interviewer, K.A. said she and Zilm were alone in his bedroom while her mother was at work. She was not

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

wearing underwear and he was wearing only his boxers. She said he massaged her buttocks and labial area for several minutes, and while massaging her buttocks, he penetrated her anus with his penis.

After her forensic interview, two police officers interviewed Zilm. His description of the incident was generally consistent with K.A.'s, but he denied touching her with his penis. He said either the pressure of the massage might have caused her to feel like something was in her anus or the massage oil made his hand slip and he accidentally jabbed her anus with his thumb. He said that at some point during the massage he touched his own genitals.

K.A.'s testimony at the preliminary hearing was consistent with her initial disclosures. On cross examination, she said she did not see whether it was Zilm's penis or his thumb that penetrated her. She said the incident gave her flashbacks of prior sexual abuse by a relative, but denied that those memories influenced what she believed happened during the incident with Zilm. She admitted she sometimes did not tell the truth, but on redirect, she said her testimony was the truth.

About a year later, Zilm moved for a new preliminary hearing, alleging that K.A. had recanted to her mother within days of disclosing the sexual abuse, that two employees of the Oklahoma Department of Human Services (ODHS) involved in a separate juvenile proceeding knew she had recanted, and that the prosecutor knew or should have known before the preliminary hearing that she had recanted but did not disclose that information to the defense. After an evidentiary hearing, the trial court remanded the case for a new preliminary hearing, finding that "individuals not employed

2

by the District Attorney's Office, by misfeasance or malfeasance, exercised unreasonable influence on the minor child K.A. to secure testimony to which she had since recanted repeatedly." Aplt. App. vol. I at 13 (internal quotation marks omitted). It held that her testimony at the first preliminary hearing was inadmissible but, after a later hearing, ruled that the State could impeach her at trial with prior inconsistent statements she made at the first preliminary hearing. K.A. did not testify at the second preliminary hearing.

Zilm moved to suppress his statement to police. After a hearing, the trial court found the statement was voluntary and non-custodial and held that the portion of the statement he made before he invoked his right to counsel was admissible.

The court also held a pretrial hearing to assess the admissibility of K.A.'s statements to the neighbor and the forensic interviewer pursuant to Okla. Stat. tit. 12, § 2803.1(A), which provides for the admission of hearsay statements by a child regarding sexual contact involving the child. K.A., the neighbor, and the forensic interviewer testified, and the State showed a videotape of the forensic interview. The court held the statements were inadmissible under the statute. But at a later hearing the court held the State could impeach K.A. with prior inconsistent statements she made during the interview. And at trial, despite its prior ruling, the court admitted K.A.'s statement to the neighbor under the excited utterance exception in Okla. Stat. tit. 12, § 2803(2).

At trial, K.A. testified that on the day of the incident she told the neighbor and her roommate she had a nightmare. When impeached with her testimony from the first preliminary hearing, she said that testimony was false. She testified that her initial reports were based on a nightmare about prior sexual abuse and that Zilm accidentally

3

jabbed her with his thumb during the massage.  She further testified that her neighbor told her what to say during her forensic interview and that ODHS case workers and the prosecutor told her to repeat her initial disclosures, which she now said were not true. The trial court instructed the jury to consider the impeachment evidence only for purposes of evaluating K.A.'s credibility and not as proof of Zilm's guilt or innocence.

The jury also heard testimony from an expert on Child Sexual Abuse Accommodation Syndrome about the reasons why a child may recant after disclosing sexual abuse.  The neighbor and sexual assault nurse testified about their observations of K.A. that day and her disclosures to them.  They both testified that K.A. said nothing about having a nightmare or previous sexual abuse.  The neighbor denied telling K.A. what to say about the incident.

The defense presented testimony from a DNA analyst that Zilm's DNA was not found on any swabs obtained from K.A.'s sexual assault examination kit.  Zilm did not testify, but the jury heard the audiotaped recording of his statement to police.

Zilm raised six claims on direct appeal: (1) the State violated his right to due process under *Napue v. Illinois*, 360 U.S. 264 (1959), by coercing K.A. to testify falsely at the first preliminary hearing and knowingly using that false testimony to impeach her at trial (the *Napue* claim); (2) multiple instances of prosecutorial misconduct—the *Napue* violation alleged in claim one and four additional instances of misconduct—deprived him of a fair trial; (3) the trial court made three erroneous evidentiary rulings; (4) the trial court erred by denying his motion to suppress his statement to police; (5) trial counsel was ineffective; and (6) the cumulative effect of the prosecutor's misconduct, the court's

erroneous evidentiary rulings, and counsel's ineffectiveness deprived him of a fair trial. The Oklahoma Court of Criminal Appeals (OCCA) rejected Zilm's claims on the merits and affirmed his conviction. The Supreme Court denied review.

Zinn then filed his § 2254 application, identifying grounds for relief that were either the same as or variations on the claims he raised on direct appeal. The district court denied his claim of constitutional error stemming from the allegedly erroneous evidentiary rulings both as unexhausted and on the merits. It denied the other five claims on the merits. The court denied the § 2254 application and denied a COA.

## ANALYSIS

Zilm needs a COA to appeal the district court's judgment. *See* 28 U.S.C. § 2253(c)(1)(A). We may issue a COA only if he "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). For a COA on the claims the district court decided on the merits, Zilm "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For a COA on the claim the district court held was unexhausted, he must show that reasonable jurists would debate both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* If we conclude that reasonable jurists would not debate the district court's procedural ruling, we need not address the constitutional question. *Id.* at 485.

Zilm seeks a COA to review the district court's denial of his *Napue*, prosecutorial misconduct, and evidentiary claims. He does not challenge the district court's denial of his other claims.

## I.     Claims Denied on the Merits (*Napue* and Prosecutorial Misconduct Claims)

### A.  Legal Framework

Under 28 U.S.C. § 2254(d), a petitioner must show that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court's determination of the facts is presumed correct, so the petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "And because state courts are presumptively competent to adjudicate claims arising under federal law, deference and reasonableness are our watchwords as we review their rulings." *Meek v. Martin*, 74 F.4th 1223, 1248 (10th Cir. 2023) (ellipsis, citation, and internal quotation marks omitted). "[I]t is insufficient to show that the state court's decision was merely wrong or even clear error. The prisoner must show that a state court's decision is so obviously wrong that no reasonable judge could arrive at the same conclusion given the facts of the prisoner's case." *Id.* (citation and internal quotation marks omitted).

6

Our task at the COA stage is to determine whether reasonable jurists could debate the district court's decision in light of the statutorily required deference to the state court. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). It is Zilm's burden to satisfy the "demanding standards" for habeas relief. *Meek*, 74 F.4th at 1249.

## B. *Napue* Claim

Under *Napue*, a defendant's due process rights are violated if the prosecution "knowingly failed to correct perjured testimony in its case, even when the evidence went only to the credibility of the witness." *United States v. Garcia*, 793 F.3d 1194, 1207 (10th Cir. 2015). "A *Napue* violation occurs when (1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material." *Id.* Whether the challenged testimony was false is a factual question. *Id.*

The petitioner has "the burden of establishing the presentation of false evidence." *United States v. Smalls*, 752 F.3d 1227, 1245 (10th Cir. 2014). "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991). Thus, a petitioner "does not sustain his burden of demonstrating perjury merely by proving that a government witness has testified falsely or has given testimony that conflicts with other statements." *United States v. Crockett*, 435 F.3d 1305, 1317 (10th Cir. 2006).

Zilm's *Napue* claim alleged the prosecutor and other state actors violated his right to due process by manipulating K.A. and her testimony, failing to timely disclose

7

recantation evidence, and using her testimony from the first preliminary hearing to impeach her at trial despite knowing that testimony was false.

The OCCA rejected the claim on direct appeal. It recognized that a "logical prerequisite" for a *Napue* claim is that the defendant "show that the testimony complained of was actually false," and that conflicts in a witness's testimony do "not support a claim that prosecutors used perjury to obtain a conviction." Aplt. App. vol. II at 246. Applying these principles to the facts of Zilm's case, the OCCA found he failed "to meet his burden of showing that the State knowingly used or failed to correct false evidence material to guilt or innocence in this prosecution." *Id.*

The district court concluded Zilm failed to show the OCCA's decision was contrary to or an unreasonable application of *Napue* to the facts of this case. As for the first two *Napue* elements, it found he had not "presented any clear and convincing evidence that the state knew that K.A.'s initial disclosures were false or that the state knowingly obtained false testimony from K.A. at the first preliminary hearing." Aplt. App. vol. I at 32. It further found the state-court record supports the reasonableness of the OCCA's presumptively correct finding because it shows that K.A.'s initial disclosures were consistent with each other and with her testimony at the first preliminary hearing. And the court held her recantation and trial testimony did not prove her initial disclosures and preliminary hearing testimony were false or show the prosecution knowingly used false testimony. The district court also found Zilm failed to satisfy the materiality element of his *Napue* claim. It explained that the inconsistency in K.A.'s testimony was immaterial because penetration was not an element of the offense—the

prosecution only had to prove that he willfully or maliciously looked upon or touched her body in a lewd or lascivious manner, *see* Okla. Stat. tit. 21, § 843.5(F), O(3)(e), (10)(b), and the jury could have inferred lewd and lascivious intent from her trial testimony and his statement to police that he touched his own genitals during the massage. Thus, the district court held it was objectively reasonable for the OCCA to decide that Zilm failed to satisfy his burden under *Napue* to show that K.A.'s preliminary hearing testimony was both false and material and that the prosecutor knowingly used false testimony to impeach her.

Before this court, Zilm repeats the narrative of events leading up to K.A.'s preliminary hearing testimony—the same events that led the state trial court to order a new preliminary hearing and declare that testimony inadmissible other than for impeachment purposes. Zilm insists the improper influence on K.A., her recantation, and her trial testimony establish that her preliminary hearing testimony was false and that the prosecutor used the testimony for impeachment despite knowing it was false. These are the same arguments the OCCA rejected, and Zilm ignores the district court's reasons for concluding the OCCA's decision was neither contrary to nor an unreasonable application of *Napue*. Zilm's restatement of the basis for his underlying arguments is insufficient to show that reasonable jurists would debate the district court's rejection of this claim.[1]

---

[1] Zilm makes conclusory arguments regarding a case in which a petition for writ of certiorari is pending before the Supreme Court to review the OCCA's rejection of claims involving alleged prosecutorial misconduct. But he does not explain how a decision in that case could constitute clearly established Supreme Court precedent warranting issuance of a COA here. Accordingly, we do not address this argument.

### C. Prosecutorial Misconduct Claim

To obtain federal habeas relief on a prosecutorial misconduct claim, the petitioner must show the improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). It is not enough to show that the conduct was "undesirable or even universally condemned." *Id.* (internal quotation marks omitted).

Zilm claimed the prosecutor committed egregious misconduct, not only as to the conduct underlying the *Napue* violation alleged in claim one, but also by (1) threatening defense witnesses with perjury charges and reopening the juvenile case if they testified; (2) accusing defense counsel of coaching K.A. to record her conversation with an ODHS worker who said there was DNA evidence to support her initial disclosure; (3) criticizing Zilm during closing argument for exercising his right to a jury trial; and (4) engaging in "courtroom histrionics during closing argument." Aplt. App. vol. II at 202.

The OCCA rejected these claims on the merits, holding, depending on the claim, that the challenged conduct was not improper, the trial court's admonition of the prosecutor and/or curative instructions were sufficient to address the misconduct, or the challenged conduct was not so improper that it affected Zilm's right to a fair trial.

In his § 2254 application, Zilm repeated the arguments he made on direct appeal and reasserted his view that the prosecutor's conduct required reversal. But he did not argue that the OCCA's decision violated either § 2254(d)(1) or (d)(2). After identifying the correct legal standard, the district court held that his "regurgitation" of his underlying arguments fell "far short of satisfying his demanding burden to show that the OCCA had

no reasonable basis, either under clearly established federal law or the specific facts of this case, to reject his prosecutorial misconduct claim." Aplt. App. vol I at 37.

Before this court, Zilm once again repeats the factual basis for his claims and his view that the alleged misconduct was "outrageous." Aplt. Br. at 14. He asserts that "the State went too far in its efforts to mold K.A.'s story to fit its narrative," *id.* at 15, and argues that we should grant a COA because the "role played by the prosecution in this case was underhanded," *id.* at 8. But he again fails to explain how he satisfied the requirements of § 2254(d), and he does not challenge the district court's conclusion that his failure to do so is fatal to his request for federal habeas relief. Reasonable jurists would not debate the correctness of the district court's ruling.

## II.    Claim Denied as Procedurally Defaulted (Evidentiary Rulings)

On direct appeal, Zilm claimed the trial court erred by permitting the prosecution to impeach K.A. with her preliminary hearing testimony and by admitting her hearsay statements to the neighbor and sexual assault nurse. Applying state law, the OCCA found no abuse of discretion in the trial court's rulings. In his § 2254 application, Zilm claimed those same evidentiary rulings deprived him of his Fourteenth Amendment right to a fundamentally fair trial. The district court held he did not exhaust his state remedies because he did not fairly present a constitutional challenge concerning the evidentiary rulings to the OCCA on direct appeal.[2]

---

[2] The district court also held that even if it would be reasonable to construe Zilm's arguments on direct appeal as fairly presenting a federal due process claim and to construe the OCCA's decision as having implicitly adjudicated a federal due process claim, he did not satisfy the requirements of § 2254(d). Because we conclude reasonable

We review de novo the denial of habeas relief for failure to exhaust state remedies. *Allen v. Zavaras*, 568 F.3d 1197, 1200 (10th Cir. 2009). Federal courts generally may not grant habeas relief to state prisoners unless all available state court remedies have been exhausted. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement allows the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). The "petitioner bears the burden of demonstrating that he has exhausted his available state remedies." *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009) (internal quotation marks omitted).

To satisfy the exhaustion requirement, a state prisoner must fairly present his claims to the state court before asserting them in federal court. *See Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009). "Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005) (internal quotation marks omitted). The exhaustion "rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Thus, a claim is exhausted only if the prisoner presented "the state courts with the same claim he urges upon the federal courts." *Id.*

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer available to

---

jurists would not debate the district court's denial of the claim on exhaustion grounds, we need not address this alternative basis for denying relief.

him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (internal quotation marks omitted). Under those circumstances, although the state courts did not explicitly deny relief based on a state procedural bar, "there is a procedural default for purposes of federal habeas."[3] *Id.* at 735 n.1.

In his briefs on direct appeal, Zilm argued that the trial court abused its discretion in admitting the evidence he claims should have been excluded at trial.[4] He made two brief references to a potential federal claim. First, in his argument heading, he states that the trial court's evidentiary rulings "result[ed] in a fundamentally unfair trial." Response to Petition for Writ of Habeas Corpus, Exhibit 5 at 45, *Zilm v. Harpe*, No. 4:20-cv-00509-CVE-JFJ (N.D. Okla. Mar. 22, 2021), ECF No. 14-5 (capitalization and bolding omitted). Second, in the conclusion paragraph, he asserted that "[t]he constitutional burden of proof standard of beyond a reasonable doubt demands that the State's evidence be free of the taint of unreliability." *Id.* at 48. But his argument relied solely on state law—he did not articulate or rely on any federal constitutional principles. *See id.* at 45-48; *see also id.* ECF No. 14-8 at 10 (argument in Zilm's OCCA reply brief regarding evidentiary claims).

---

[3] A federal court may consider procedurally defaulted claims if the prisoner shows cause for the default and prejudice from a violation of federal law, *Coleman*, 501 U.S. at 750, or that denying review would result in "a fundamental miscarriage of justice," *id.*, because he has made a "credible showing of actual innocence," *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Zilm does not argue that he can make either showing.

[4] Zilm's briefs to the OCCA are attached as exhibits to the State's response to his § 2254 application, and although the response itself is included in the appellant's appendix, the exhibits are not. We take judicial notice of the briefs because they are "accessible from the district court docket," *Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020), and we cite to them by their Electronic Case Filing (ECF) docket number.

He thus did not present the OCCA "with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 276. And because the claim he raised in his § 2254 application is not the same as the claims he raised in state court, reasonable jurists would not debate the district court's conclusion that the claim was unexhausted. *See id.*; *see also Johnson v. Williams*, 568 U.S. 289, 299 (2013) (holding that "a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim"); *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (holding that to fairly present a claim alleging the denial of a petitioner's Fourteenth Amendment right to due process in state court, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process"); *Prendergast v. Clements*, 699 F.3d 1182, 1184-85 (10th Cir. 2012) (upholding dismissal of petitioner's double-jeopardy challenge to his sentence as unexhausted where his claim on appeal in state court was that the trial court abused its discretion in considering certain evidence, a claim that did not "put the [state] courts on notice of the federal constitutional claim").

## CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court

Allison H. Eid
Circuit Judge