**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 19, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

TIMOTHY DEWAYNE KINCHION,
SR.,

 Defendant - Appellant.

No. 04-6315

(D.C. No. CR-03-148-001-T)
(W. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY,** and **McCONNELL**, Circuit Judges.

 At trial, the government presented the following narrative of Appellant's drug dealing activities. Appellant contacted an individual about becoming reengaged in dealing drugs. Unbeknownst to Appellant, this individual was cooperating with the Oklahoma City Police Department ("OCPD"). Appellant, who was already in debt to the cooperating individual, asked the cooperating individual if he could be fronted one kilogram of cocaine. The deal was set up at the direction of the OCPD.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On the day of the arranged deal, Appellant and his co-defendant dropped off several cars at the cooperating individual's place of business as collateral for the cocaine. Later that day, Appellant and his co-defendant returned to the place of business to pick up the cocaine; police audio and video recorded the exchange. As the co-defendant, who was driving, and Appellant left the place of business, a marked OCPD car attempted to make a stop, but the co-defendant and Appellant led police on a high-speed chase. During the twenty-five to thirty-minute car chase, Appellant dumped the cocaine out the window. After the chase ended and Appellant was placed under arrest, police found a revolver in the console of the car.

While Appellant was being processed at the county jail, he told the processing officers that when the OCPD made its first attempt to pull over the car he had said, "I've got a kilo, go, go, go!" Appellant also talked with several other inmates about the drug transaction and the chase while awaiting trial.

Prior to trial, Appellant made two motions for a continuance based on what he terms "eleventh-hour" disclosures by the government. Appellant's first motion for continuance was made on October 9, 2003, and was denied by the district court that same day for lack of specificity. On October 16, 2003, Appellant filed another motion for continuance pointing to information that he had received from the government that day. That information was subject to a protective order issued by the district court on October 15, 2003. Appellant argued that the

recently released information from the government—that an OCPD officer involved in Appellant's case had been implicated in a Drug Enforcement Administration ("DEA") investigation of a false report—warranted a continuance. On October 17, 2003, however, the district court denied Appellant's second continuance motion because (1) the officer in question was not, and had never been, scheduled to testify at trial, and (2) "the recently disclosed information . . . could only be used to impeach the officer and . . . does not go to the issues to be determined by the jury (i.e., it is not directly related to the innocence or guilt of the defendants)." Order, Case No. CR-03-148-001-T, at 2 (W.D. Okla. Oct. 17, 2003). Additionally, it appears that Appellant had some knowledge of this information prior to the government disclosure, since in an August 12, 2003 discovery request, Appellant asked for information about the officer in question. The trial began on October 20, 2003. That same day Appellant moved for a mistrial based on the same grounds as the two continuance motions. The district court denied Appellant's motion.

Appellant was convicted by a jury of (1) conspiracy to possess with intent to distribute cocaine, (2) possession with intent to distribute cocaine, and (3) carrying a firearm during and in relation to a drug trafficking crime. He was sentenced to 352 months' imprisonment, consisting of 292 months' imprisonment on counts one and two, to run concurrently, and 60 months' imprisonment on count three, to run consecutively to the other sentences.

Appellant's main contention is that his trial and conviction were the result of a police set-up. He argues that, because of the dismissal of an earlier case against him, the OCPD and, in particular, the officer in question were intent on putting Appellant in jail. Appellant makes three legal arguments on appeal. First, he argues that the district court erred when it denied his pretrial motion for a continuance and subsequent motion for a mistrial. Second, he argues that the evidence was insufficient to support his conviction. Third, he argues that the district court committed both constitutional and nonconstitutional sentencing errors.

With respect to Appellant's first claim regarding the allegedly erroneous denial of the motion for continuance, "[w]e review the denial of a motion for continuance of trial for abuse of discretion and 'will find error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant.'" *United States v. Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999) (quoting *United States v. Simpson*, 152 F.3d 1241, 1251 (10th Cir. 1998)). We look to a number of factors to determine whether the district court acted arbitrarily, including:

> (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; (4) the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

Id. (quotation omitted).

We conclude that, in light of the abuse of discretion standard and these factors, the district court acted within its discretion when denying Appellant's motion for a continuance. In this case, as the district court correctly noted, there was nothing to be gained by allowing the continuance. Appellant argues that the denial of a continuance thwarted his ability to investigate the OCPD officer's role in the case and that the late disclosure of the report was a clear violation of *Brady v. Maryland*, 373 U.S. 83 (1963), since the OCPD officer's conduct "went directly to the heart of the guilt of the accused." Appellant diligently pursued the continuance, and the government failed to argue that it would be inconvenienced by the continuance, but Appellant has not demonstrated either that the continuance would have satisfied his expressed need or that he suffered harm because the continuance was denied. No information that Appellant would have sought during the continuance was admissible at trial, and, therefore, a continuance would not have helped Appellant prepare for trial. The OCPD officer was not scheduled to testify at trial, and the evidence Appellant sought would only have gone to impeaching that officer.[2] We therefore hold that the district

---

[2]In the interest of fairness to the OCPD officer, the government observes that the DEA report in question concerned an investigation of a DEA agent other than the OCPD officer implicated by Appellant. The agent under investigation had no involvement with Appellant's case. The OCPD officer was a witness in the investigation. Although the report concluded that the OCPD officer's conduct

(continued...)

court did not abuse its discretion when denying Appellant's motion for a continuance.

For the same reasons, we reject Appellant's claim that the district court erred in denying Appellant's motion for a mistrial. "A district court's denial of a motion for mistrial is reviewed for abuse of discretion." *United States v. Crockett*, 435 F.3d 1305, 1317 (10th Cir. 2006) (citing *United States v. Meienberg*, 263 F.3d 1177, 1180 (10th Cir. 2001)). "A mistrial may only be granted where a defendant's right to a fair and impartial trial has been impaired." *United States v. Kravchuk*, 335 F.3d 1147, 1155 (10th Cir. 2003). Given the irrelevant nature of the investigation and the OCPD officer's actions therein to Appellant's trial, we cannot say that the fairness of Appellant's trial was in any way compromised. We note that Appellant conceded at oral argument that he was not alleging malicious prosecution by the U.S. Attorney's Office.

Next, Appellant argues that the evidence presented at trial was insufficient to sustain a conviction. "The evidence necessary to support a verdict need not

---

[2](...continued)
with regard to that investigation was so inappropriate that, were he a federal officer, he would have been fired, the DEA Administrator determined that the OCPD officer had not been afforded due process in the production of the report because the officer had never been given a chance to rebut the allegations against him. Due to the defects in the report, the DEA Administrator rescinded and destroyed the report. Apparently, the OCPD officer was not even aware of the report until late September 2003, and the OCPD cleared the officer of any wrongdoing after its own investigation into the allegations.

conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." *United States v. Wilson*, 182 F.3d 737, 742 (10th Cir. 1999) (citation and internal quotations omitted). Under this standard, "[w]e will not reverse a conviction . . . unless no rational trier of fact could have reached the disputed verdict." *Id.* In this case, there was enough evidence presented at trial to allow a rational trier of fact to reach this verdict.

The prosecution presented sufficient evidence of a conspiracy and intent to distribute to support Appellant's conviction. "To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent." *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir. 1998). "To prove a charge of possession with the intent to distribute, the government must show that the defendant possessed the controlled substance; knew that he had it; and possessed it with the intent to distribute it." *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000).

Several sources implicated Appellant in the conspiracy. First, the confidential informant testified that he was contacted by Appellant. The confidential informant also testified regarding the particulars of the reverse-buy transaction, including the cars used for collateral and the eventual transfer of the

-7-

drugs. Second, there was video and audio evidence from the transaction, including Appellant referring to "a whole one," which the jury could have reasonably inferred meant a whole kilogram of drugs. Third, Appellant and co-defendant fled when the OCPD attempted to pull them over. Fourth, Appellant disposed of the drugs out the window during the high-speed chase. Fifth, witnesses testified that Appellant spoke with fellow prison inmates about how he executed the buy. Appellant completely ignores these facts in his brief. Accordingly, the jury had sufficient evidence to support convictions on the conspiracy and intent to distribute charges.

Likewise, the jury had sufficient evidence to convict on the firearms charge. To establish a violation of 18 U.S.C. § 924(c), the prosecution must establish beyond a reasonable doubt that "(1) the Defendants committed the underlying crime of violence . . .; (2) the Defendants 'carried' a firearm; and (3) the carrying of the firearm was 'during and in relation to' the [crime]." *United States v. Shuler*, 181 F.3d 1188, 1190 (10th Cir. 1999) (footnote omitted) (quoting *United States v. Lampley*, 127 F.3d 1231, 1240 (10th Cir. 1997), *cert. denied*, 522 U.S. 1137 (1998)). Since there was sufficient evidence of Appellant's guilt with respect to the drug charges, we look to see what evidence was presented that Appellant "carried" the firearm "during and in relation to" the drug transaction. The Supreme Court explained that the term "in relation to" requires at a minimum that the firearm have "some purpose or effect with respect to the drug trafficking

crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993). Despite Appellant's protestations to the contrary, there was evidence that Appellant was aware of the loaded, .44 caliber pistol in the center console of the vehicle. There was testimony that Appellant told a fellow prisoner while awaiting trial that he had "a snub in the console," which Appellant explained to the witness meant a snub-nose revolver. Appellant told this witness that he knew the firearm was present and would not have gone to buy drugs without being armed. In addition, testimony revealed that Appellant explained that he was "heavily strapped" and "with artillery" on the day of the reverse buy, by which he meant armed and dangerous. This testimony against the backdrop of a $20,000 drug deal was sufficient for a rational trier of fact to draw a reasonable inference from the direct evidence that this statement referred to a firearm. *See United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995).

Finally, Appellant makes a *United States v. Booker*, 543 U.S. 220 (2005), argument. The district court imposed Appellant's sentence on September 9, 2004, in between the Supreme Court's *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker* decisions. Appellant raised a *Blakely* argument at sentencing and now continues to argue that, because the judge found certain facts only by a preponderance of the evidence standard under the mandatory federal sentencing guideline scheme, Appellant's sentence violated his Sixth Amendment rights as

described in *Blakely* and *Booker*. Specifically, Appellant contends that the district court improperly applied an obstruction-of-justice enhancement for the car chase, erroneously denied an acceptance-of-responsibility reduction, and miscalculated his base offense level by using "cocaine base" instead of "cocaine powder."

In this case, it is clear that when the district court imposed the sentence, it felt bound by the mandatory guidelines to impose that sentence—a clear violation of *Booker*. *See* 543 U.S. at 259. It is also clear that the district court committed constitutional *Booker* error when it relied upon judge-found facts in enhancing Appellant's sentence mandatorily. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (*en banc*). The district court did, however, anticipate the potential invalidation of the federal Sentencing Guidelines and so offered an alternative sentence. The district court noted: "In the event the foregoing sentence is ruled unconstitutional by the Supreme Court, the following alternative sentence is imposed: . . . ten years on Count 1, ten years on Count 2, and five years on Count 3. Counts 1 and 2 shall run concurrently with each other. Count 3 shall not be served concurrently with any other sentence."

Given this lower alternative sentence, we must remand for resentencing. Unlike in *United States v. Corchado*, 427 F.3d 815, 821 (10th Cir. 2005), and the host of cases analyzing district court-provided alternative sentences, the district court here did not provide for similar sentences under mandatory and

discretionary sentencing.  Rather, the alternative sentence sharply reduced the then-mandatory Guideline sentence by apparently eliminating the enhancements and using the minimum periods of incarceration.  Given this sentencing disparity, we would be speculating about the district court's likely sentence even if we were somehow able to determine whether either sentence complied with *Booker*'s new reasonableness requirements, which we are unable to do on the record before us.

After *Booker*, sentencing courts are still required to consult the Guidelines and apply the 18 U.S.C. § 3553 factors when imposing sentence.  543 U.S. at 264. The district court consulted the presentence report and was obviously aware of the Guidelines, but this court is unable to approve the district court's method for creating two disparate sentences.[3]

For the foregoing reasons, we **DENY** Appellant's motion to unseal documents**, AFFIRM** the district court's denial of Appellant's motion for continuance, **AFFIRM** the district court's denial of Appellant's motion for mistrial, hold that there was sufficient evidence to support Appellant's conviction, and **REVERSE** and **REMAND** for resentencing consistent with the Supreme Court's decision in *Booker* and this court's decision in *United States v. Kristl*, 437

_____

[3] While not binding on us, in a recent order and judgment we have set out an excellent recapitulation of the steps required to be taken by district courts in cases like this.  *See United States v. French*, No. 04-5168, 2006 WL 2867995 (10th Cir. Oct. 10, 2006).

F.3d 1050, 1053-54 (10th Cir. 2006).

                              Entered for the Court


                              Monroe G. McKay
                              Circuit Judge