FILED
United States Court of Appeals
Tenth Circuit

**April 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff–Appellee,

v.

TIMOTHY DEWAYNE KINCHION,
SR.,

     Defendant–Appellant.

No. 07-6064
(D.C. No. 03-CR-148-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **MCKAY**, and **LUCERO**, Circuit Judges.

---

Timothy DeWayne Kinchion appeals his sentence of 352 months' imprisonment. Kinchion was convicted on one count each of conspiracy to possess with intent to distribute cocaine powder in violation of 21 U.S.C. § 846 (Count 1), possession with intent to distribute cocaine powder in violation of § 841(a)(1) (Count 2), and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3).

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

On appeal, Kinchion urges (1) that his sentence is procedurally unreasonable because the district court applied a presumption of reasonableness to the advisory United States Sentencing Guidelines ("Guidelines") sentencing range, and (2) that his sentence violates the Sixth Amendment because it was increased based upon the judge-found fact that he intended to convert the cocaine powder into cocaine base ("crack"). Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that Kinchion's sentence is procedurally unreasonable, and **REVERSE** and **REMAND** for resentencing.

# I

Kinchion and a codefendant, Jackie Nash, purchased one kilogram of cocaine from a police informant in a reverse sting operation in June 2003. Both were arrested after a chase by police. The pair went to trial and were convicted by a jury on all counts charged.[1] By special interrogatory, the jury found that Kinchion possessed between 500 grams and 50 kilograms of cocaine powder.

Kinchion was initially sentenced before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), under the then-mandatory Guidelines. To calculate Kinchion's offense level on Counts 1 and 2, his presentence report ("PSR") applied § 3D1.2(d) of the Guidelines. This subsection allows "counts involving substantially the same harm," including counts based on

---

[1] The events leading to Kinchion's arrest are set forth in greater detail in our decision in United States v. Nash, 482 F.3d 1209, 1211-13 (10th Cir. 2007).

"the quantity of a substance involved," to be grouped together for calculation of a single offense level. U.S.S.G. § 3D1.2(d). Relying on witness testimony establishing that Kinchion "was aware that the cocaine powder he possessed during the pursuit was to be cooked by Nash into cocaine base," the PSR calculated Kinchion's offense level based on possession of one kilogram of crack rather than cocaine powder.

Under the version of the Guidelines then in effect, equal quantities of crack and cocaine powder were treated with drastically different severity. Using one kilogram of crack as the basis for its calculation, the PSR established a base offense level of 36. See § 2D1.1(c)(2). Utilizing a two-level enhancement for reckless endangerment during flight, see § 3C1.2, the PSR calculated a total offense level of 38. Together with a criminal history category of III, the Guidelines calculation yielded a sentencing range of 292-365 months' imprisonment for Counts 1 and 2. Title 18, section 924(c) of the United States Code mandates a sentence of 60 months' imprisonment for Count 3, to be served consecutively to any other sentence imposed. Because the sentence was fixed by statute, the PSR included no offense level calculation for that count. See U.S.S.G. § 2K2.4. Prior to his first sentencing hearing, Kinchion filed an objection to the PSR, arguing that his offense level should be calculated based on cocaine powder rather than crack. Under a powder-based calculation, Kinchion's

final offense level would be 28, and his sentencing range, 97-121 months' imprisonment. See § 2D1.1(c)(7).

At sentencing on September 9, 2004, witness Rosheldon Jenkins testified that he had engaged in crack transactions with Kinchion several times in the past but never bought powder from, or sold powder to, Kinchion. For the court's benefit, the government also reviewed relevant testimony from four trial witnesses who stated that Kinchion and Nash routinely purchased powder and converted it into crack. Based on this testimony, the government argued, Kinchion and Nash "would have rocked [the kilogram of cocaine] up into crack cocaine and that's how it would have been distributed." Therefore, Kinchion "should be held accountable for [crack cocaine] in calculating the base offense level," just as Nash, who was sentenced earlier, had been.

In response, Kinchion argued that the crack cocaine sentencing calculation was inappropriate because the jury found that he had possessed only cocaine powder. The court asked Kinchion's counsel whether the Guidelines allowed a defendant to "be held accountable for the intended use of the powdered cocaine," adding that "[i]t seems routine in these cases that that is a part of the consideration for sentencing." Counsel responded by stressing that the jury specifically found that he had possessed only cocaine powder.

The court overruled Kinchion's objection and sentenced him at the bottom of the applicable Guidelines range—a concurrent 292 months on Counts 1 and 2,

-4-

and a consecutive 60 months on Count 3, for a total term of imprisonment of 352 months. Concerned that the Supreme Court might soon rule the Guidelines unconstitutional, the court also imposed an alternative sentence of 120 months' concurrent imprisonment on Counts 1 and 2 and a consecutive 60 months' imprisonment on Count 3, for a total of 180 months.

In Kinchion's first appeal, we remanded for resentencing in light of the Supreme Court's intervening decision in Booker. United States v. Kinchion, 201 F. App'x 606, 612 (10th Cir. 2006) (unpublished). Kinchion appeared before the district court for resentencing on March 5, 2007. He renewed his argument that his Guidelines range should be calculated based on cocaine powder rather than crack, and the government reminded the court of the evidence presented at trial and at the original sentencing hearing.

After hearing this argument, the court indicated its intent to impose the alternative sentence from Kinchion's first sentencing hearing:

> [T]he court feels that, having made the judgment originally that the lower sentence given in the alternative way was sufficient to satisfy the goals of sentencing, the court not only feels that it is still a valid position but feels, indeed, honor-bound to give Mr. Kinchion the benefit of that lower sentence, and I know of no reason why my judgment at that time of the lower sentence wouldn't be as valid today as it was then. The statutory minimum, in this court's opinion, is sufficient to address the various factors of sentencing . . . .

The court calculated the same Guidelines sentencing range that it reached at the first hearing, summarized the § 3553(a) factors, and concluded "that those factors

and those goals of sentencing are satisfactorily met" by a 180-month sentence of imprisonment, consisting of a concurrent 120 months as to Counts 1 and 2 and a consecutive 60 months as to Count 3.

After the district court declared its intention to impose this sentence, however, the government objected. Citing a series of Tenth Circuit cases establishing a "sliding scale" of appellate reasonableness review,[2] the government argued that a 180-month sentence was substantively unreasonable. Counsel told the court that "under the guidance that we have from the [Tenth] Circuit, it would be determined to be an unreasonable departure outside the calculated guideline range." In order to further consider the appropriate sentence, the court called a recess.

Several days later, on March 13, 2007, the court reconvened sentencing. Having studied the issue further, and after hearing argument from Kinchion, the court reversed its earlier course and reimposed the original within-Guidelines sentence. As the court explained, its decision resulted from its conclusion that the prior intended sentence would be invalid under Tenth Circuit caselaw:

---

[2] Specifically, the government referred the court to our decisions in United States v. Kristl, 437 F.3d 1050 (10th Cir. 2006), United States v. Valtierra-Rojas, 468 F.3d 1235 (10th Cir. 2006), United States v. Cage, 451 F.3d 585 (10th Cir. 2006), and United States v. Bishop, 469 F.3d 896 (10th Cir. 2006). Under the "sliding scale" approach, which was substantially invalidated in Gall v. United States, 128 S. Ct. 586 (2007), we "use[d] the percentage of a [variance] as the standard for determining the strength of the justifications required for a specific sentence." Id. at 595.

The court's feeling or evaluation of the matter when the alternative sentence was imposed . . . was that it was enough, under all the circumstances, to satisfy the various factors alluded to by [Kinchion] and appearing at Section 3553 of Title 18, with which this court is very familiar . . . .

But . . . the government's correct under the law. It was the very substantial degree of variance that simply is impermissible in this case under the case law now applicable.

Put another way, the level of the court's originally intended alternative sentence compared to the advisory guideline range was so significant and substantial that such a variance would require a sufficient explanation and justification, with compelling reasons, under later established case law. In this case no such justification, explanation, or compelling reason can be made. None exists. Therefore, the court will impose a guideline sentence. . . .

<u>A guideline sentence is presumed to be reasonable</u>, takes into account the various factors of all cases, and, being presumptively reasonable, the court must find that, though it perhaps would have preferred a different sentence, that . . . the bottom of the guideline range cannot be said to fail to address . . . the various factors found in that cited section. . . . <u>[T]his court just simply cannot say that the bottom of the guideline range . . . is not reasonable</u>.

(emphases added). Accordingly, the court reached the same 352-month sentence it had originally imposed. Kinchion objected at length, arguing that a district court's duty after <u>Booker</u> is to independently balance the § 3553(a) factors and warning of the dangers of creating "a mandatory advisory guideline." Kinchion now timely appeals his sentence.

## II

We review a district court's sentencing determination for reasonableness, asking whether the district court abused its discretion in selecting the sentence

imposed. United States v. Smart, ___ F.3d ___, 2008 WL 570804, at *4 (10th Cir. Mar. 4, 2008). "Our appellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." Id. at *2.

At the appellate level, we apply a presumption of substantive reasonableness to those sentences falling within a properly calculated advisory Guidelines range. United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006). This presumption, however, is a tool for the use of appellate courts alone: A district court "may not presume that the Guidelines range is reasonable." Gall, 128 S. Ct. at 596-97; see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, sentencing courts have a duty to "subject[] the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." Id. A presumption that the Guidelines sentence is reasonable as applied to each individual defendant would undermine this process. See id.

Accordingly, we have repeatedly recognized that a sentencing court commits procedural error if it presumes that the advisory Guidelines sentence is reasonable. See, e.g., United States v. Angel-Guzman, 506 F.3d 1007, 1016 (10th Cir. 2007) ("A district judge may not simply rest on the authority of the Sentencing Guidelines, but must weigh all relevant § 3553(a) factors."); United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007); United States v.

-8-

Arrevalo-Olvera, 495 F.3d 1211, 1213 (10th Cir. 2007); United States v. Begay, 470 F.3d 964, 975-76 (10th Cir. 2006), cert granted on other grounds, 128 S. Ct. 32 (2007). Such an error occurred here.

Reviewing the district court's statements at the March 13 hearing, it is abundantly clear that the court erroneously applied a presumption of reasonableness to the Guidelines sentence. Indeed, the court explicitly stated as much. It apparently thought that it could not vary from the Guidelines without first demonstrating that the Guidelines sentence would be unreasonable under § 3553(a). This understanding flips the sentencing court's statutory duties on their head: Although the Guidelines calculation must provide a "starting point and the initial benchmark" for the crafting of a reasonable sentence, Gall, 128 S. Ct. at 596, the other factors encompassed by § 3553(a) must also be considered, id. at 597 n.6. The sentencing court's conclusion—although perhaps understandable given the rapid evolution of federal sentencing law—was procedurally in error.

Because Kinchion preserved this argument by asserting generally that the district court erred in failing to exercise the full range of its sentencing discretion, we must reverse unless the district court's error was harmless. See Conlan, 500 F.3d at 1169-70. "Harmless error is that which did not affect the district court's selection of the sentence imposed," and the burden of proving harmlessness "is on

the beneficiary of the error"—here, the government. <u>United States v. Montgomery</u>, 439 F.3d 1260, 1263 (10th Cir. 2006) (quotations omitted).

Arguing that the procedural error was harmless, the government points to the court's statement that no "justification, explanation, or compelling reason" for a variance exists. But this statement is too ambiguous to meet the government's burden of showing that the district court's erroneous presumption of reasonableness had no effect on the sentence imposed. <u>Id.</u> It may be, as the government suggests, that the district court meant that no factors which could support a lower sentence exist in this case. Nonetheless, the district court's statement could just as plausibly mean that no justification <u>sufficient to rebut a presumption of reasonableness</u> exists. The latter interpretation is bolstered by the court's explicit finding at the March 5 hearing that the § 3553(a) goals of sentencing would indeed be met by a lower sentence, and by its statement at the March 13 hearing that it "would perhaps have preferred a different sentence." We may not enter a "zone of speculation and conjecture" by concluding that the district court would impose the same sentence on remand absent application of a presumption of reasonableness. <u>Conlan</u>, 500 F.3d at 1170 (quotation omitted).

We are sympathetic to the very conscientious trial Judge, who got caught in a rapidly evolving area of the law. Because the court's error was not harmless, however, we remand this case yet again for resentencing.

**III**

-10-

Kinchion also argues that his sentence was imposed in violation of the Sixth Amendment, because the district court increased his sentence based on a judge-found fact: Kinchion's intent to convert the cocaine into crack.[3] We disagree.

This court has repeatedly held that "after <u>Booker</u>, a district court is not precluded from relying on judge-found facts in determining the applicable Guidelines range so long as the Guidelines are considered as advisory rather than mandatory." <u>United States v. Townley</u>, 472 F.3d 1267, 1276 (10th Cir. 2007). In fact, "[u]nder an advisory Guidelines regime, a conviction, by itself, authorizes a sentence up to the statutory maximum." <u>United States v. Crockett</u>, 435 F.3d 1305, 1319 (10th Cir. 2006). Kinchion's sentence was well within the statutory

_____

[3] To the extent that Kinchion asserts that the district court's finding regarding Kinchion and Nash's intended use of the cocaine is in direct <u>conflict</u> with the jury's finding that they possessed powder cocaine, he is mistaken. There is no logical inconsistency between a person possessing powder cocaine, and that same person having the intent to convert the powder to crack at some point in the future. <u>Cf.</u> <u>United States v. Magallanez</u>, 408 F.3d 672, 683-85 (10th Cir. 2005) (allowing a sentencing court to increase a sentence based on drug quantities that it found by a preponderance of the evidence, even though a jury had found a lower quantity by special interrogatory). Moreover, "when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard." <u>Id.</u>

maximum for each of his counts of conviction.[4] We thus conclude that his Sixth

Amendment argument fails.[5]

## IV

For the foregoing reasons, we **REVERSE** and **REMAND** for resentencing

consistent with this order and judgment.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

---

[4] The maximum sentence for possession of 500 grams to 5 kilograms of cocaine powder with intent to distribute is 40 years' imprisonment. See 21 U.S.C. § 841(b)(1)(B)(ii). For a conviction of conspiracy to commit this same offense, the maximum penalty is also 40 years' imprisonment. See § 846.

[5] Kinchion does not argue that the district court misinterpreted the Guidelines when it concluded that intent to convert powder cocaine into crack authorizes a sentencing calculation based on crack, and we express no opinion on this matter.

We note that Kinchion was sentenced prior to an amendment to the Guidelines which lowered the advisory sentencing ranges applicable to crack cocaine offenses. If Kinchion is again sentenced based on possession of crack, this amendment will apply to his resentencing proceeding. See U.S.S.G. § 2D1.1 (2008); U.S.S.G. App. C, Amend. 706 (setting an effective date of Nov. 1, 2007 for the revised § 2D1.1 sentencing ranges). Amendments to the Guidelines are applied to all sentences imposed after their effective date unless doing so would raise ex post facto concerns. 18 U.S.C. § 3553(a)(4); U.S.S.G. § 1B1.11. In this case, application of the new sentencing range would be beneficial to Kinchion and thus would not violate ex post facto principles. United States v. Gerber, 24 F.3d 93, 95-96 & n.4 (10th Cir. 1994). Moreover, a separate amendment to the Guidelines provides that the revisions to § 2D1.1 apply retroactively to all defendants sentenced under the Guidelines, even those (unlike Kinchion) sentenced before the effective date of Amendment 706. U.S.S.G. § 1B1.10 (2008).